IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br>     Plaintiff, <br><br> v. <br><br> ANDREW BERNHARDT, <br>     Defendant. | Case No. 14-CV-128 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Travelers Casualty and Surety Company of America ("Travelers") seeks a declaratory judgment as to any rights and obligations it has in connection with an insurance contract that is the subject of an action filed against Defendant Andrew Bernhardt. Currently before the Court is Plaintiff Travelers Casualty and Surety Company of America's motion for summary judgment [35]. For the following reasons, the Court grants Plaintiff's motion for summary judgment [35] and will enter judgment in favor of Plaintiff Travelers Casualty and Surety Company of America and against Defendant Andrew Bernhardt.[1]

**I.    Background**[2]

In August 2013, Travelers issued a one-year insurance policy to Town Center Bank ("TCB").[3] Defendant Bernhardt was the president, CEO, and chairman of Town Center Bank

---

[1] Travelers originally brought suit against Defendant Bernhardt and Town Center Bank; however, Travelers voluntarily dismissed Defendant Town Center Bank in August 2014.

[2] Local Rule 56.1 requires that statements of fact contain allegations of material fact and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). In this matter, Plaintiff filed a Local Rule 56.1(a) Statement of Material Facts. Defendant Bernhardt responded to Plaintiff's statement by admitting all of Plaintiff's fact statements. Defendant Bernhardt did not file a Statement of Additional Undisputed Facts. Because Defendant failed to file his own statement of facts or contest Plaintiff's facts, the Court takes the relevant facts from Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts. See *Brasic v. Heinemann's Bakeries, Inc., Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); see also *Jupiter Aluminum Corp. v. Home Insurance Company,* 225 F.3d 868, 870-71 (7th Cir. 2000).

("TCB") during the relevant time period. The policy contains a Directors and Officers Liability Coverage Insuring Agreement ("D&O Policy"), which states as follows:

> The Company will pay, on behalf of an Insured Person, Loss that is not indemnified by the Insured Organization and that the Insured Person becomes legally obligated to pay for any Claim first made against the Insured Person during the Policy Period, or any applicable Extended Reporting Period, for a Wrongful Act occurring before or during the Policy Period.

The D&O Policy has a limit of liability of $2,000,000, with a $100,000 retention, and the retention applies to defense costs, settlements, or judgments. The policy's Liability Coverage Terms and Conditions section requires Travelers to advance defense costs if certain conditions are satisfied and states as follows:

> [U]pon written request, the Company will advance Defense Expenses with respect to such Claim. Such advanced payments by the Company will be repaid to the Company by the Insureds severally according to their respective interests in the event and to the extent that the Insureds are not entitled to payment of such Defense Expenses under such Liability Coverage. As a condition of any payment of Defense Expenses under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any Defense Expenses paid to or on behalf of any Insured if it is finally determined that any such Claim or portion of any Claim is not covered under such Liability Coverage.

"Insured" is defined by the D&O Policy as "the Insured Persons and the Insured Organization." "Insured Organization" is defined by the D&O Policy as any "(1) entity named in ITEM 1 of the Declarations; (2) Subsidiary; and (3) such entity or Subsidiary as a debtor in possession under Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law or regulation." Bernhardt admits that TCB is the entity named in ITEM 1. The D&O Policy further defines "Insured Person" as "any natural person who was, is, or becomes a duly elected or appointed

---

[3] The policy period ran from August 1, 2013, to August 1, 2014.

director, officer, Manager, or in-house general counsel of the Insured Organization, or any functional equivalent position."

Exclusion 3 of the D&O Policy provides as follows:

INSURED VERSUS INSURED

The Company will not be liable for any Loss for any Claim against any Insured that is brought or maintained by or on behalf of any Insured in any capacity; provided, this exclusion will not apply to:

a. a Claim that is a Shareholder Derivative Demand or Shareholder Derivative Action brought and maintained by a person who is not an Insured Person and who brings and maintains the Claim without the active solicitation, assistance, or participation of any Insured; provided, any Insured Person's Whistleblower Activity alone will not be considered the active solicitation, assistance, or participation of an Insured;

b. a Claim brought and maintained by any Insured Person for contribution or indemnity, if the Claim directly results from another Claim covered under this Policy;

c. a Claim brought and maintained by a natural person who was a director, officer, or Manager of the Insured Organization, or any functional equivalent position, but who has not served in such capacity for at least four years preceding the date the Claim is first made and who brings and maintains the Claim without the active solicitation, assistance, or participation of any natural person who: (1) is serving as a director, officer or Manager of the Insured Organization, or any functional equivalent position; or (2) was serving in such capacity within such four-year period; provided, any Insured Person's Whistleblower Activity alone will not be considered the active solicitation, assistance, or participation of an Insured;

d. a Claim brought and maintained by a court-appointed examiner, receiver, conservator, liquidator, trustee, rehabilitator, or similar official serving in the same legal capacity as a court-appointed examiner, receiver, conservator, liquidator, trustee, or rehabilitator of the Insured Organization, in any bankruptcy proceeding by or against the Insured Organization;

e. a Claim that is brought and maintained outside of the United States (including any U.S. territory, possession or protectorate), Canada, the United Kingdom, Australia, and any other jurisdiction governed by a

3

common law legal system, but only if coverage for such Claim is specifically granted by endorsement to this Policy; or

    f.    a Claim brought and maintained by an employee of the Insured Organization.

The D&O Policy defines Loss as follows:

Loss means the amount of any:

    1.    damages, judgments, settlements, pre-judgment and post-judgment interest, and Defense Expenses; provided, with respect to the multiple portion of any multiplied damages award or punitive or exemplary damages incurred by any Insured, Loss only includes such damages to the extent they are insurable under the law of any jurisdiction that is the most favorable to the insurability of such damages and has a substantial relationship to the Insured, the Claims, the Company, or this Policy; Loss, other than Defense Expenses, does not mean any of the following:

\*\*\*

    5.    any amount that constitutes disgorgement or other loss that is uninsurable under the law pursuant to which this Policy is construed; provided, the Company will not assert that any amount of judgment or settlement in a Securities Claim for a violation of section 11 or section 12 of the Securities Act of 1933, as amended, including Defense Expenses attributable to such Claim, constitutes disgorgement or other insurable loss.

The policy also contains a Financial Institution Professional Liability Insuring Agreement ("FIPL") which states that "the Company will pay on behalf of the Insured, Loss for any Claim first made during the Policy Period or, if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, by a Borrower for a Lending Act."  Bernhardt admits that TCB is not a Borrower.  Like the D&O Policy the FIPL has a limit of liability of $2,000,000, with a $100,000 retention, and the retention applies to defense costs, settlements, or judgments. "Insured" is defined by the FIPL as "the Insured Persons and the Insured Organization." "Insured Organization" is defined by the FIPL as "the Named Insured, any Subsidiary, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of

4

America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law." TCB is the Named Insured. Exclusion 9 of the FIPL provides as follows:

> The Company will not be liable for Loss for any Claim by, or on behalf of, or in the name or right of:
>
> a.      any Insured; or
>
> b.      any organization that at the time the Wrongful Act is committed, or the date the Claim is made: (i) is owned, operated or controlled by any Insured; or (ii) owns, operates or controls any Insured, provided that this exclusion will not apply to: (1) any Claim in the form of a cross claim, third party claim or other claim for contribution or indemnity by an Insured Person and which is part of, or results directly from, a Claim which is not otherwise excluded by the terms of this Liability Coverage; or (2) any Claim brought by an Insured Person solely in his or her capacity as a customer of the Insured Organization for a Professional Services Act or a Trust Act; provided that such Claim is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other Insured.

On August 7, 2013, TCB filed a complaint against Bernhardt in the Circuit Court of the Twelfth Judicial Circuit, Joliet, Will County, Illinois. TCB's complaint alleges causes of action for breach of fiduciary duty and negligence arising out of Bernhardt's decision to issue certain loans while he was an employee and officer of TCB. TCB alleges that as of December 2006, Bernhardt was TCB's CEO, president, and chairman and had authority to issue individual consumer or commercial loans of up to $750,000 each without seeking TCB's Loan Review committee approval. Despite the authority given to Bernhardt, TCB alleges that it had certain policies and procedures in place for underwriting and lending that TCB expected Bernhardt to adhere to. TCB alleges that in late 2006, Bernhardt began accepting and approving a series of 26 questionable, high risk, commercial loans in amounts within his sole authority to make. The complaint further alleges that Bernhardt made and managed these loans without adherence to

TCB's policies and good banking practices. Subsequently, the loans went into default and TCB alleged that Bernhardt failed to follow TCB's policies and good banking practices in enforcing and collecting the loans. The TCB complaint further alleges that Bernhardt's actions caused TCB to lose in excess of $3,000,000 related to the 26 loans and seeks compensatory damages in excess of $3,000,000, disgorgement of all compensation provided by TCB to Bernhardt while he was in breach of his fiduciary duties, costs, and attorneys' fees.

As a result of TCB's claims against him, Bernhardt, an Insured as defined by the policy, submitted a claim to Travelers for coverage under the policy. On September 30, 2013, Travelers sent correspondence to Bernhardt denying coverage for the allegations in TCB's complaint based on the D&O Policy's "Insured Versus Insured Exclusion" (Exclusion 3), which precludes coverage for claims where an Insured makes a claim against another Insured. In addition, Travelers denied coverage regarding the FIPL because the Financial Institution Policy only provides coverage for Loss resulting from a Claim from a Borrower and TCB is not a Borrower. Further, Travelers denied coverage based on the FIPL's Exclusion 9, which precludes coverage for claims made by an Insured. Finally, Travelers denied coverage based on the FIPL's definition of Loss which specifically excludes coverage for Claims requesting disgorgement.

## II. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

This case presents that straightforward question of whether Plaintiff Travelers must provide insurance coverage and indemnification to Defendant Bernhardt, as an insured under the D&O Policy that Travelers issued to TCB, for claims that TCB has made against Bernhardt. Bernhardt does not claim that there should be coverage under the FIPL, and he further represents that he does not seek indemnity for any disgorgement claims made by TCB.[4] Thus, the Court turns directly to Travelers' obligations with respect to the D&O Policy.

---

[4] In its motion for summary judgment, Travelers argued that the insured-versus-insured exclusion in the D&O Policy and the FIPL barred coverage for the claims arising out of TCB's complaint. In addition, Travelers asserted that there was no coverage under the FIPL because the FIPL only provides coverage for Loss resulting from Claims made by a Borrower and TCB is not a Borrower as defined by the FIPL. In his response to Travelers' summary judgment motion, Bernhardt states that "Bernhardt has not suggested that there should be coverage of TCB's claims against him under the [FIPL]". Bernhardt thus

7

As the Seventh Circuit has explained:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina,* 645 F.3d 928, 933 (7th Cir. 2011) (internal citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,* 860 N.E.2d 307, 314 (2006); see also *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.,* 435 F.3d 729, 732 (7th Cir. 2006). "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 347 (7th Cir. 2010) (citation omitted).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s] the factual allegations of the underlying complaint * * * to the language of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.,* 622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted). An insurer may decline to defend only when "it is clear from the face of the underlying complaint that the allegations set forth * * * fail to state facts to bring a case within, or potentially within, the coverage of the policy." *Swiderski Elecs.,* 860 N.E.2d at 315; see also *Lyerla v. AMCO Ins.*

---

concedes that there is not coverage for TCB's claims under the FIPL. Further, Bernhardt represents in his response that he "does not seek indemnity for any disgorgement claims made by TCB." Accepting that concession, the amount sought by TCB that constitutes disgorgement is not covered.

*Co.,* 536 F.3d 684, 688 (7th Cir. 2008). That is, "an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Microplastics,* 622 F.3d at 810; see also *In re Country Mut. Ins. Co.,* 889 N.E.2d 209, 209–10 (2007) ("[B]ecause the duty to defend is gauged by the allegations of the complaint, what the facts subsequently show is immaterial. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent."); *Lexmark Int'l, Inc. v. Transp. Ins. Co.,* 761 N.E.2d 1214, 1221 (2001) ("[O]nly the allegations in the underlying complaint, considered in the context of the relevant policy provisions, * * * should determine whether an insurer owes a duty to defend an action brought against an insured.") (internal quotation marks omitted). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Microplastics,* 622 F.3d at 811 (internal quotation marks omitted); see also *General Star National Insurance Company v. Adams Valuation Corporation*, 2014 WL 4783027, at *2 (N.D. Ill. Sept. 23, 2014).

Bernhardt's sole argument is that, in order for the insured-versus-insured exclusion to apply, Travelers must establish that the TCB complaint is a collusive suit. The Seventh Circuit has stated that the purpose of an insured-versus-insured exclusion is

> to exclude coverage of collusive suits—such as suits in which a corporation sues its officers or directors in an effort to recoup the consequences of their business mistakes, thus turning liability insurance into business-loss insurance—and of suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling.

*Level 3 Communications v. Federal Ins. Co.*, 168 F.3d 956, 958 (7th Cir. 1999). Thus, the Seventh Circuit has specifically identified situations beyond collusive suits—such as suits arising between members of a corporate family—in which an insured-versus-insured exclusion would

apply. Bernhardt does not cite any legal authority, or any policy language, that requires Travelers to prove collusiveness to apply the exclusion. Instead, he simply maintains that, historically, the exclusion was designed to preclude coverage for collusive suits. But the historical context of an insured-versus-insured exclusion does not impose on Travelers a duty to prove collusiveness when the policy itself does not require such a showing. Moreover, as explicitly stated by the Seventh Circuit, the exclusion also was designed to preclude coverage for claims that arise out of disputes among members of a "corporate family," arguably the case here. See also *LLDG Operating Co., et al. v. Great Amer. Ins. Co.*, 2006 WL 2024255, at *3 (N.D. Ill. July 12, 2006) (finding that insured-versus-insured exclusion barred coverage for the underlying litigation without requiring a showing of collusion); *Andreou and Casson, Ltd. v. Liberty Ins. Underwriters, Inc.*, 877 N.E.2d 770, 775-76 (Ill. App. Ct. 1st. Dist. 2007) (same).

Here, the language of the insured-versus-insured exclusion is clear and unambiguous and there is no requirement pursuant to the terms of the policy (or in Illinois law) that requires a showing of collusiveness for the exclusion to preclude coverage. In the present D&O Policy, Bernhardt admits that TCB is the named insured. Pursuant to the terms of the policy, Bernhardt, as TCB's former CEO, president, and chairman, also is an insured person. See D&O Policy (defining "Insured Person" as "any natural person who was, is, or becomes a duly elected or appointed director, officer, Manager, or in-house general counsel of the Insured Organization, or any functional equivalent position"). Exclusions in the D&O Policy preclude coverage for claims against an insured brought by an insured, subject to six exceptions. Those six exceptions do not apply to the allegations set forth in TCB's complaint.[5] In sum, the unambiguous language

---

[5] Indeed, from the face of the TCB complaint, it is clear that none of these exceptions apply. For instance, TCB did not bring its complaint as a Shareholder Derivative Action, but rather as a tort action against Bernhardt as TCB's former CEO, president, and chairman. In addition, TCB is the Insured Organization and did not bring its complaint in the capacity of a natural person, Insured Person, or court-

of the D&O Policy clearly bars coverage for the TCB complaint as it is a "Claim against any Insured [Bernhardt] that is brought or maintained by or on behalf of any Insured [TCB] in any capacity." Travelers therefore is entitled to a declaratory judgment that Exclusion 3 of the D&O Policy bars coverage for the TCB complaint. See, *e.g., Oliver v. Indian Harbor Ins. Co.*, 2008 WL 565514, at *2 (N.D. Ill. Feb. 27, 2008) (finding insured-versus-insured exclusion that precluded coverage for any claim against an insured, "brought by, on behalf of, or at the direction, any insured," unless one of the exceptions applied, to be clear and unambiguous).

**IV.     Conclusion**

For these reasons, the Court grants Plaintiff Travelers' motion for summary judgment [35]. Declaratory judgment will be entered in favor of Plaintiff Travelers Casualty and Surety Company of America and against Defendant Andrew Bernhardt.

Dated:  October 28, 2014

_____
Robert M. Dow, Jr.
United States District Judge

---

appointed entity. Moreover, the complaint was filed in Will County, Illinois, and not a foreign jurisdiction. Finally, TCB is the Insured Organization and did not, and could not, bring the complaint in the capacity of an employee of TCB.